UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re:*

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC., et al.,

No. 14-cv-4170 (NSR)

OPINION & ORDER

WEST MILFORD SHOPPING PLAZA, LLC,

　　　　　　　　　Appellant,

　　-against-

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC.,
　　　　　　　　　Appellee.

NELSON S. ROMÁN, United States District Judge

　　　　This appeal arises from the bankruptcy proceedings of The Great Atlantic & Pacific Tea

Company ("A&P" or "Appellee"). Prior to A&P's petition for bankruptcy, West Milford

Shopping Plaza ("West Milford" or "Appellant") filed an action in the Superior Court of New

Jersey seeking to recover from A&P certain costs for which West Milford claims A&P is liable.

Based on this same claim, West Milford filed a cure objection in the A&P bankruptcy

proceedings. On October 28, 2013, A&P filed a motion for summary judgment with regards to

West Milford's claim. After hearing oral argument, the Bankruptcy Court issued a bench ruling

granting A&P's motion for summary judgment and dismissing West Milford's cure objection on

March 28, 2014. (*See* Bench Ruling, ECF No. 14: Item 13; Bankruptcy Order, ECF No. 14: Item

14.)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/21/2015

West Milford now appeals from the Bankruptcy Court's March 28 Order pursuant to Fed. R. Bankr. P. 8001(a) and respectfully submits that the Bankruptcy Court erred in granting A&P's motion for summary judgment. Appellant filed the instant motion on June 10, 2014. For the reasons that follow, Appellant's motion is DENIED.

## BACKGROUND

The following facts are taken from the record as designated on appeal. Appellant owns and operates the West Milford Shopping Plaza, a commercial shopping center located in West Milford, New Jersey. (West Milford Shopping Plaza, LLC's Response to Debtor's Rule 56 Statement of Material Undisputed Facts, "Reply 56.1," ¶1.) A&P leases a 48,000-square-foot space in the plaza in which it operates a supermarket. (*Id.*) The A&P supermarket is serviced by a septic system comprised of multiple septic tanks and a 1,000 gallon grease interceptor. (*Id.* at ¶¶4, 6.)  The lease between the parties provides that West Milford is responsible, in the absence of any negligence on behalf of A&P, to maintain and repair the septic system. (*Id.* at ¶¶7-8.)

The septic system failed, for the first time, in 2002 (the "2002 Failure"). (*Id.* at ¶15.) Following the failure, West Milford retained experts to determine its cause. (*Id.* at ¶17.) The parties disagree as to the results of that investigation. A&P asserts that no cause was ever determined, while West Milford claims that every expert examining the system concluded that the 2002 Failure was caused by the excessive accumulation of grease and oils within the system. (Rule 56.1 Statement of Material Undisputed Facts in Support of Debtor's Motion for Summary Judgment , "App.'s 56.1," ¶17; Reply 56.1, ¶17.) Following the 2002 Failure, West Milford opted to replace the septic system "in kind." (Reply 56.1, ¶16.)  Sometime after the 2002 Failure, Langan Engineering & Environmental Services ("Langan") recommended that West Milford

install a mechanical treatment system, but West Milford chose an alternative approach. (*Id.* at ¶¶18-19.)

In the spring of 2007, the septic system failed a second time (the "2007 Failure"). (*Id.* at ¶21.)  West Milford retained Langan to investigate the cause of the system failure. (*Id.* at ¶22.) On June 26, 2007, Langan issued a report entitled "Septic System Inspection, West Milford A&P Supermarket, Union Valley Road, West Milford, Passaic County" (the "Langan Report"). (*Id.* at ¶22; Langan Report, ECF No. 14: Item 5, Exhibit A.)

In its investigation, Langan inspected the septic system, examined the operations of the A&P supermarket, and conducted wastewater sampling for the purpose of measuring the levels of fats, oils, and grease ("FOG"), total suspended solids ("TSS"), and the five day biological oxygen demand ("BOD5") in the effluent, septic system, and disposal field. (*Id.* at ¶23.)  Langan concluded that the tested levels of FOG, TSS, and BOD5 in the septic system exceeded typical concentrations in residential wastewater, according to standards set by the United States Environmental Protection Agency's Onsite Wastewater Treatment Systems Manual (the "USEPA Manual"). (*Id.* at ¶24.) A&P claims that Langan's lead engineer, Girard Fitamant, incorrectly adhered to *residential* wastewater standards, which are inapplicable to commercial operations. (App.'s 56.1, ¶28.) On the other hand, West Milford asserts that the report only referred to residential standards illustratively because nonresidential standards do not exist. (Reply 56.1, ¶28.)

Mr. Fitamant testified that he did not perform any tests of the effluent to determine the concentration of chemicals typically found in cleansers or degreasers and was unaware that it was possible to test wastewater effluent for concentrations of such chemicals. (*Id.* at ¶31.) Based on the above, the Langan Report concluded that possible causes of the 2007 Failure include

excessive oils and grease, excessive cleaning agents, and high levels of biologic mat or excessive

solids in the disposal field. (*Id.* at ¶26.) The report noted that this list of causes was not

exhaustive, though no additional causes have been identified since the issuance of the report.

(Counterstatement of Additional Material Undisputed Facts, ¶69.)

West Milford argues that A&P was negligent in dumping grease and oils, as well as

improper cleaning agents, down the drains. (*Id.* at ¶¶41, 53.) A&P denies these allegations, and

explains that "[e]xcess grease and oil, such as renderings from the rotisserie oven, was deposited

into a receptacle located in the back of the store, which was then sold to Darling International, a

third-party vendor that pays supermarkets and other food retailers for discarded oils and grease."

(App.'s 56.1, ¶53.) A&P also denies that improper cleaning agents were used in the drains. (*Id.* at

¶¶47-50.) Third-party vendors regularly cleaned out internal grease traps at West Milford, (*Id.*, ¶52)

and West Milford retained Coppola Services, Inc. for service and maintenance of the system.

(Counterstatement of Additional Material Undisputed Facts, ¶23.) The current dispute arises

from this disagreement regarding the 2007 Failure.

### STANDARD OF REVIEW

The standard of review applicable to matters within bankruptcy jurisdiction is governed

by the Federal Rules of Bankruptcy Procedure. On appeal, the court "may affirm, modify, or

reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further

proceedings." *In re DPH Holdings Corp.*, 468 B.R. 603, 611 (S.D.N.Y. 2012) (quoting former

Fed. R. Bankr. P. 8013).[1] "The Court will review the Bankruptcy Court's legal conclusions de

---

[1] On April 25, 2014, the Federal Rules of Bankruptcy Procedure were amended, effective December 1, 2014, by order of the Supreme Court of the United States. *See* Order Amending Fed. R. Bankr. P. (Apr. 25, 2014), http://www.supremecourt.gov/orders/courtorders/frbk14_d28l.pdf. The amendments, among other things, removed Rule 8013 and replaced it with a revised version of former Rule 8011. Despite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court.

novo and its factual findings for clear error." *Weber v. SEFCU*, 477 B.R. 308, 310 (N.D.N.Y. 2012) *aff'd sub nom. In re Weber*, 719 F.3d 72 (2d Cir. 2013) (citing *In re Smorto*, 07–CV–2727, 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008)). Likewise, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Margulies*, 517 B.R. 441, 451 (S.D.N.Y. 2014) (citing *In re Lafayette Hotel P'ship*, 227 B.R. 445, 448 (S.D.N.Y.1998)); *cf. U.S. v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008) (counseling "particularly strong deference" to findings based on "credibility determinations"). "Finally, mixed questions of law and fact are reviewed either 'de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual.'" *In re Tyson*, 433 B.R. 68, 77-78 (S.D.N.Y. 2010) (citing *Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program,* 595 F.3d 447, 455 (2d Cir. 2010) (citation omitted)).

Accordingly, in the present case, the Court must "determine de novo whether there are genuine issues of material fact, drawing all inferences in favor of the non-moving party, and affirm[] summary judgment only if no reasonable trier of fact could have found for the non-moving party.*" In re Rockefeller Ctr. Properties*, 266 B.R. 52, 57 (S.D.N.Y. 2001) *aff'd*, 46 F. App'x 40 (2d Cir. 2002) and *aff'd*, 46 F. App'x 47 (2d Cir. 2002) (internal citations omitted).

"A bankruptcy court's evidentiary rulings are reviewed for an abuse of discretion." *In re Worldcom, Inc.,* 357 B.R. 223, 227 (S.D.N.Y. 2006) (citing *Manley v. AmBase Corp*., 337 F.3d 237, 247 (2d Cir. 2003) (internal citation omitted). "An abuse of discretion occurs where a court base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Emanuel*, 450 B.R. 1, 6 (S.D.N.Y. 2011) *aff'd*, 460 F. App'x 48 (2d Cir. 2012)

and *aff'd*, 460 F. App'x 48 (2d Cir. 2012) (citing *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks and citation omitted).

## DISCUSSION

### I.      Admissibility of Testimony

In opposition to A&P's motion for summary judgment, Appellant relies on the testimony of Roger Turley. Mr. Turley, as former Vice President of Real Estate Development for A&P, testified at his deposition as to the contents of statements made by a Mr. D'Ariano, also employed by A&P. Mr. Turley testified that Mr. D'Ariano, who passed away in 2011, conveyed to him that he was told by A&P employees that certain other employees had dumped grease and cleaning agents down the drains. (*See* App.'s 56.1, ¶41.) The Bankruptcy Court excluded this evidence as hearsay, and this Court will review that decision for an abuse of discretion. *See In re Delphi Corp.,* 394 B.R. 342, 344 (S.D.N.Y. 2008) ("Bankruptcy Court's evidentiary rulings are subject to an abuse of discretion standard of review.") (internal citation omitted).

The Bankruptcy Court, in its holding, explained that to be admissible, "the exceptions under both 801(d)(2) and 805 need to apply" to Mr. Turley's statements. (Bench Ruling, ECF No. 14: Item 13, 77:6-7.) Rule 805 provides that "hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Since Mr. Turley's testimony contains a statement made to him by Mr. D'Ariano (second level) quoting statements of other employees (first level), two levels of hearsay must be examined.

In relevant part, Federal Rule of Evidence 801 provides that a statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Appellant contends that Mr. Turley's statements are excluded from the definition of hearsay as

vicarious admissions. (Appellant's Brief, ECF No. 6, at p. 6.) The record does not contain any objection to the second level statement (i.e., the statement made by Mr. D'Ariano to Mr. Turley) qualifying as a vicarious admission. Thus, the only relevant question is whether the statements of the A&P employees made to Mr. D'Ariano (the first level statement) fall under the vicarious admission exception to the general rule excluding hearsay evidence.

Under Rule 801(d)(2)(D), a vicarious admission is nonhearsay when a party establishes: "(1) the existence of the agency relationship; (2) that the statement was made during the course of the relationship; and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condominium Assn.*, 963 F.2d 534, 537 (2d Cir. 1992). Where the identity of the speaker is not available, "this foundational predicate may be established by circumstantial evidence, [but] the statements themselves are not alone sufficient." *Farganis v. Town of Montgomery*, 397 F. App'x 666, 668 (2d Cir. 2010) (citing Fed. R. Evid. 801(d)(2) ("The contents of the statement shall be considered but are not alone sufficient to establish the ... agency or employment relationship and scope thereof....")). Because Mr. Turley cannot identify the employees who made these statements, the relevant question is whether a foundation has been properly established with enough circumstantial evidence to show "the statement was made by an agent, concerning the scope of the agency, and during the agency." *Zaken v. Boerer*, 964 F.2d 1319, 1324 (2d Cir. 1992) (citing *United States v. Cruz*, 910 F.2d 1072 (3d Cir.1990), *cert. denied*, 498 U.S. 1039 (1991)).

Appellant failed to provide circumstantial evidence to the Bankruptcy Court sufficient to establish the requisite foundation. In its brief to this Court, Appellant asserts that because the statements were allegedly made as part of an internal investigation, the statements must have been made by agents within the scope of their agency. (Appellant's Brief, ECF No. 6, at p. 6.)

However, Appellant does not introduce any evidence to substantiate this internal investigation besides the statements themselves. Without additional indicia of reliability, this cannot be enough circumstantial evidence to sustain a proper foundation.

In an attempt to distinguish the instant case from *Travessi v. Saks Fifth Avenue Inc*., No. 00-8970, 2005 WL 1981705, at *6-7 (S.D.N.Y. Aug. 15, 2005), Appellant contends that in *Travessi,* the statements did not fall into the vicarious admission exception because "neither the [speaker's] position nor the scope of the [speaker's] employment by a party, if any, could [be] ascertained." (Appellant's Brief, ECF No. 6, at p. 11.) The Court fails to see how the instant case differs from *Travessi*. The only evidence put forth by Appellant is that these statements were made in the course of an internal investigation, that the information was gathered from "conversations with department people … on how they were dealing with [grease disposal]," and that the statements were reported to Mr. D'Ariano then to Mr. Turley. (Appellant's Brief, ECF No. 6, at p. 11.) Even if the Court could conclude that this circumstantial evidence demonstrates the statements were made by employees of A&P, questions remain regarding the speakers' positions within A&P and therefore whether they were making statements within the scope of their agency. Due to the lack of an evidentiary foundation, the Bankruptcy Court denied admission of Mr. Turley's deposition testimony for the truth of the matter asserted.

Appellant, in the alternative, argues that "even if the testimony of Mr. Turley is not admissible to establish that A&P employees in fact dumped grease into drains and then tried to compensate with degreasing agents and cleansers, it is admissible to demonstrate that A&P had notice of a risk of such conduct." (Appellant's Brief, ECF No. 6, at p. 13.) The Second Circuit has affirmed that "an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay." *George v. Celotex*

*Corp.*, 914 F.2d 26, 30 (2d Cir. 1990). To the extent the statement is offered to show A&P had knowledge of the statement itself, rather than the fact that employees were allegedly engaging in improper disposal practices, the statement is not hearsay. As the Bankruptcy Court noted, however, the statement was made in or around 2002 regarding alleged employee actions before the 2002 Failure. (Bench Ruling, ECF No. 14: Item 13, 77:20-25-78:1.) For that reason, the Bankruptcy Court concluded that the evidence is not relevant to the 2007 Failure, as it does not provide notice of any risk after the 2002 repairs. (*Id.*) More specifically, the statements made by employees reference alleged negligence prior to the 2002 Failure. The septic system was later replaced in kind. The statements do not reference any actions or alleged negligence by employees *subsequent to* the replacement, which would relate to the 2007 Failure. Therefore, the Bankruptcy Court correctly concluded the statements are not relevant to the 2007 Failure.

For these reasons, the Bankruptcy Court denied admission of Mr. Turley's deposition testimony. After reviewing the record, the Court finds that the Bankruptcy Court's holding was within "range of permissible decisions" and therefore was not an abuse of discretion. *In re Emanuel*, 450 B.R. at 6.

## II.     Negligence

"In New Jersey, as elsewhere, it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594, 59 A.3d 561, 571 (2013) (citing *Stanley Co. of Am. v. Hercules Powder Co.*, 16 N.J. 295, 315, 108 A.2d 616, 626 (1954); *Ochs v. Pub. Serv. Railway Co.*, 81 N.J.L. 661, 662, 80 A. 495, 496 (E. & A. 1911); Black's Law Dictionary 1133–34 (9th ed. 2009)).

Appellant has submitted sufficient evidence to create a question of material fact as to the existence of a duty of care. However, the record does not contain any admissible evidence as to a breach of that duty. For these reasons, the Court affirms the Bankruptcy Court's grant of summary judgment on the issue of negligence.

A.      *Duty of Care*

The determination of whether a duty of care exists is a matter of law to be decided by the Court and therefore this Court will review it *de novo*. *Wang v. Allstate Insurance Co.*, 125 N.J. 2, 15, 592 A.2d 527 (1991). The question of "whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." *Kelly v. Gwinnell*, 96 N.J. 538, 544, 476 A.2d 1219, 1222 (1984) (quoting *Goldberg v. Housing Auth. of Newark*, 38 N.J. 578, 583, 186 A.2d 291, 293 (1962)). The evaluation is "fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439, 625 A.2d 1110 (1993).

Courts have recognized that in determining whether a duty exists, foreseeability of the harm is critical to the inquiry of fairness. "The foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care. The [a]bility to foresee injury to a potential plaintiff does not in itself establish the existence of a duty, but it is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572-73, 675 A.2d 209, 212 (1996) (citing *Carter Lincoln–Mercury, Inc. v. EMAR Group, Inc.*, 135 N.J. 182, 194, 638 A.2d 1288 (1994) (internal citations and quotation marks omitted)).

In the context of a duty of care, foreseeability is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis. *Weinberg v. Dinger*, 106 N.J. 469, 484-

85, 524 A.2d 366 (1987). Knowledge of the risk may be actual or constructive (i.e., if defendant was "in a position" to "discover the risk of harm"). *J.S. v. R.T.H.,* 155 N.J. 330, 338, 714 A.2d 924, 928 (1998). "Once the foreseeability of an injured party is established, ... considerations of fairness and policy govern whether the imposition of a duty is warranted." *Carter Lincoln– Mercury, Inc.,* 135 N.J. at 194-95.

Appellant asserts that the 2007 Failure was plainly foreseeable because A&P had knowledge of the 2002 Failure and "[e]very expert who investigated the 2002 failure determined that it was caused by an excessive inflow of grease and oils from the A&P store." (Appellant's Brief, ECF No. 6, at p. 16.) For this conclusion, Appellant cites to the Reo Declaration and the Semeraro Declaration (Reply 56.1, ¶17.) Both declarations, however, supply only general conclusory statements about the cause of the 2002 Failure. (*See* Semeraro Declaration, ECF No. 14: Item 11, at ¶8 ("The 2002 failure was caused by an excessive accumulation of grease and oils within the system"); Reo Declaration, ECF No. 14: Item 10, at ¶5 ("Every expert who investigated the 2002 failure agreed that the failure was caused by an excessive accumulation of grease and oils within the system.")) The record does not contain any expert report, basis for these statements, or further explanation as to how the experts arrived at those determinations. Appellant does not present any other evidence demonstrating that experts determined the cause of the failure to be excessive grease and oils. Appellant's assertion that A&P's own internal investigation revealed the same causes is based on the testimony of Mr. Turley, which is inadmissible. Therefore, Appellant has not provided any admissible evidence to show A&P had knowledge of the cause of the 2002 Failure, which cuts against the foreseeability of the second failure and a corresponding duty of care to prevent it.

However, "if there is any evidence in the record from any source from which a reasonable inference in a non-moving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder, P.C. v. Barnhart*, 481 F.3d. 141, 148 (2d Cir. 2007) (internal citations omitted). After a thorough review of the record, the Court determines that a question of material fact exists to defeat summary judgment as to whether A&P owed a duty of care.

The record contains numerous acknowledgements that A&P took steps to minimize the flow of grease and oils into the septic system. For example, the declaration of Nick Reo states that during his tenure as Director of Maintenance at A&P, he directed store managers, via an email message, not to dump grease into the drains. (*See* Reo Decl., ECF No. 14: Item 10, at ¶8.) In addition, in its own statement of facts, A&P acknowledges that it took "numerous precautions to ensure that excessive amounts of grease were not disposed of in the sanitary sewer line." (Reply 56.1, ¶56.) A&P also explains that third-party vendors regularly cleaned the grease traps to dispose of any accumulated grease. (*Id.*, ¶55.) The logical conclusion flowing from A&P's precautionary measures is that A&P knew that excessive grease and oils could damage the septic system. For that reason, a question of material fact exists as to whether A&P had knowledge of the risk of harm that would give rise to a duty of care.

Appellee contends that, because no generally accepted standard as to acceptable levels of grease, oils, and cleaning agents in septic tank wastewater exist, this prevents the imposition of a duty of care. (Brief of Appellee, ECF No. 10, at p. 16.) Not so. A jury could conclude that A&P only had a duty to act reasonably in their efforts to monitor and limit the amount of grease and oils entering the septic system. A lack of precise levels or specifications is not sufficient to prevent the existence of a duty of care.

       *B.*       *Breach*

      In a motion for summary judgment, the moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents ... [and] affidavits or declarations," Fed.R.Civ.P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(B). A&P argues the latter: West Milton has not produced admissible evidence to show that A&P breached its duty of care. To then survive a motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As West Milton has failed to present any admissible evidence of breach, it has not met its burden.

      In an attempt to show a question of material fact as to A&P's negligence, West Milford principally relies on the Langan Report (Langan Report, ECF No. 14: Item 5, Exhibit A.) Appellant contends that excessive levels of grease and oils indicate negligence on behalf of A&P. Based on testing and observations of A&P, the Langan Report concluded that excessive oils and grease, excessive cleaning agents, and high levels of biologic mat or excessive solids in the disposal field were "possible causes" of the 2007 Failure. (*See* Langan Report, ECF No. 14: Item 5, Exhibit A.)  Appellant asserts that, although the report makes clear this list of causes is not exhaustive, these are the only possible causes of the failure and therefore A&P must have been negligent in their disposal methods. This argument, however, is tenuous as it is missing a crucial link. While the report may show that excessive grease was a possible *cause* of the failure, it does not show that A&P's *negligence* was the cause of the excessive grease or that the amount

of grease was objectively *excessive*.  In fact, A&P admits that some grease disposal via the sanitary sewer line is necessary in the normal operation of their business. (*See* Reply 56.1, ¶59.) In other words, it is certainly possible that excessive (a term undefined as to commercial operations by relevant regulations) grease would result even if A&P acted as a reasonably prudent person would with regards to their disposal methods, especially in light of A&P's limited knowledge of specific standards as to acceptable levels of TSS, FOG, and BOD5 in a commercial septic system. Therefore, the question is not whether A&P disposed of grease and oils, but whether their disposal was negligent. Without strict commercial limits as to levels of TSS, FOG, and BOD5 in a septic system, the conclusion that A&P was negligent cannot stem solely from tested amounts of TSS, FOG, and BOD5.[2]

West Milford also contends that improper use of cleaning agents was a cause of the 2007 Failure. To support this argument, Appellant cites to the Langan Report and the declaration of Michael Semeraro, supervising engineer at Langan. (Langan Report, ECF No. 14: Item 5, Exhibit A; Semeraro Decl., ECF No. 14: Item 11.)  While the declaration contains a number of observations and statements that create a question sufficient to survive summary judgment as to whether the use of certain cleaning agents *caused* the damage to the septic system, what is missing is any evidence that A&P acted unreasonably in its alleged use of these chemicals.

The Langan Report demonstrates that the concentrations of TSS, FOG, and BOD5 were not diminished throughout the system. (Langan Report, ECF No. 14: Item 5, Exhibit A.) Semeraro explains that, "[g]rease and oils will pass through grease interceptors if the grease and

---

[2] West Milford also alleges that this conclusion is based on observations of A&P's operations. This statement is generally conclusory. Where specific observations or reports are offered to escape the conclusory nature, the Court addresses their admissibility and relevance (i.e. Mr. Reo's and Mr. Turley's testimony). As an additional note, the Langan Report observes that grease from the rotisserie was collected and disposed of in rendering containers, which tends to show A&P's reasonable care. (*See* Langan Report, ECF No. 14: Item 5, Exhibit A.)

oils are suspended by hot water, degreasers, and/or other emulsifying agents…" and the fact that the "concentrations noted in the June 2007 report were determined to support a finding that the 2007 failure was caused by… improper use of chemicals … because the levels were not decreased throughout the system." (Semeraro Decl., ECF No. 14: Item 11, ¶¶14, 20.)  This statement is sufficient to raise a dispute as to causation, but the assertion that the use of the cleaning agents was "improper" is wholly conclusory and without evidentiary support.

West Milford fails to offer additional admissible evidence of A&P's breach to defeat a motion for summary judgment. The remaining evidence cited by West Milford as to the levels of resulting grease is conclusory or inadmissible hearsay. For example, in their 56.1 statement, West Milford explains that Mr. Reo received reports from A&P's store manager that employees were dumping grease down the drains rather than taking buckets of grease outside for proper disposal. (*See* App.'s 56.1, ¶53). The statements of A&P's store manager, however, are inadmissible hearsay and therefore will not be considered by the Court.[3] In addition, the Court has already concluded that the statements of Mr. Turley as to employees dumping grease and bleach down the drains are equally inadmissible. West Milford similarly does not supply any evidence in admissible form to show A&P's improper or unreasonable use of cleaning agents.[4] More specifically, West Milford did not test the septic system for concentrations of chemicals; West Milford does not provide any level of chemicals that would be unreasonable; West Milford

---

[3] If West Milford were to claim these statements are admissible as vicarious admissions, the Court would face the same reliability issue it faced with Mr. Turley's testimony, as analyzed in Part I. It is possible that West Milford could lay the proper foundation by identifying the employees making this statement. This foundation, however, is not available in the record and therefore is not considered by the Court. Even if the statement were to be admitted, as the Bankruptcy Court noted, "instances of dumping grease is insufficient to show anything more than causation as far as whether there was any specific amount of grease that could not be dumped." (March 28, 2014 Bench Ruling of the Hon. Robert D. Drain, U.S.B.J., ECF No. 14: 14, 78:17-20.)

[4] That West Milford observed bottles of certain cleaning agents (specifically, products containing sodium hypochlorite) at A&P does not create any inference that A&P improperly used these cleaners in the sewer lines.

does not provide any evidence of A&P using certain prohibited chemicals; etc. West Milford has therefore failed to provide admissible evidence regarding A&P's breach of its duty of care, and the Court therefore affirms the Bankruptcy Court's grant of summary judgment on the issues of duty and breach.

## III.   *Res Ipsa Loquitor*

Under New Jersey law, "[t]he doctrine of *res ipsa loquitur* permits an inference of defendant's negligence where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiffs own voluntary act or neglect." *Buckelew v. Grossbard*, 87 N.J. 512, 526, 435 A.2d 1150, 1156 (1981) (internal citation and quotation omitted). "The rule in effect creates a permissive presumption that a set of facts furnish reasonable grounds for the inference that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred." *Szalontai v. Yazbo's Sports Cafe*, 183 N.J. 386, 398, 874 A.2d 507, 515 (2005).

The exclusive control criterion is fundamentally at the core of a *res ipsa loquitor* inquiry. *See Bornstein v. Metro. Bottling Co.*, 26 N.J. 263, 271, 139 A.2d 404, 409 (1958) ("Exclusive control of the instrumentality by the defendant is of the essence of this rule of evidence."). "The doctrine only applies where the direct cause of the accident and so much of the surrounding circumstances as was essential to its occurrence, were within the *sole control* of the defendant, its agents or employees, at the time thereof." *Oelschlaeger v. Hahne & Co.*, 2 N.J. 490, 494, 66 A.2d 861, 863 (1949) (citing *Den Braven v. Meyer Bros.*, 1 N.J. 470, 64 A.2d 219 (Sup.Ct. 1949); *Cicero v. Nelson Transportation Co.*, 129 N.J.L. 493, 495, 30 A.2d 67 (Sup.Ct. 1943); *Conover v. D.L. & W. Ry. Co.*, 92 N.J.L. 602, 604, 106 A. 384 (E. & A. 1919); *Reardon v.*

*Boston Elevated Ry. Co.*, 247 Mass. 124, 141 N.E. 857 (Sup.Jud.Ct., Mass. 1923); 38 Am.Jur. (Negligence) s 300, p. 996) (emphasis added).

It is true, as Appellee asserts, that the "exclusive control" prong does not require all other possible causes of the injury be eliminated. *See Bahrle v. Exxon Corp.,* 279 N.J. Super. 5, 35, 652 A.2d 178, 192 (App. Div. 1995) aff'd, 145 N.J. 144, 678 A.2d 225 (1996). Exclusive control does, however, require that the "likelihood [of other possible causes] must be so reduced that the greater probability lies at defendant's door." *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 292, 471 A.2d 25, 31 (1984).

In the instant case, though A&P had exclusive access to the drains, the septic system itself was the responsibility of West Milford. Under the terms of the lease, West Milford had the responsibility to maintain and repair the septic system. In addition, after the 2002 Failure, Langan recommended that West Milford install a mechanical treatment system, which West Milford opted not to do. (*See* Reply 56.1, ¶¶18-19.) Therefore, West Milford clearly had access to the system and had the authority to install additional mechanics that may have been able to avoid the 2007 Failure. Thus, A&P did not have exclusive control of the septic system, and West Milford has failed to satisfy this prerequisite to the application of *res ipsa loquitor. See also Davis v. Brickman Landscaping, Ltd.*, No. A-1945-11T1, 2012 WL 2579502, at *4 (N.J. Super. Ct. App. Div. July 5, 2012) *rev'd on other grounds*, 219 N.J. 395, 98 A.3d 1173 (2014) (Plaintiffs sued private fire sprinkler maintenance inspectors for wrongful death resulting from fire at a hotel in which they were staying. The court held that *res ipsa loquitor* does not apply to private fire sprinkler maintenance inspectors because they did not have exclusive control over the fire alarm system where the "hotel exerted some control over [the] system.").

For these reasons, the Court cannot hold that the "greater probability [of the negligence that caused the injury] lies at defendant's door." *See Brown,* 95 N.J. at 292.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's order dismissing Appellant's complaint.

Dated:    October 2/ 2015
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge